IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES JACKSON,                            )
                                          )
       Plaintiff,                       )
                                          )
       v.                               )   Civil Action No. 05-307 Erie
                                          )
JO ANNE B. BARNHART,                      )
Commissioner of Social Security,          )
                                          )
       Defendant.                       )

## MEMORANDUM OPINION

McLAUGHLIN, J.

      Plaintiff, James Jackson, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Jackson protectively filed an application for DIB on October 14, 2003, alleging that he was disabled since August 20, 2003 due to pain and numbness from two hernia operations (Administrative Record, hereinafter "AR", at 48-50; 57-58). His application was denied, and he requested a hearing before an administrative law judge ("ALJ") (AR 31-34; 36).

      Following a hearing held on January 28, 2005, the ALJ in a written decision dated February 11, 2005, found that Jackson was not entitled to a period of disability or disability insurance benefits under the Act (AR 15-22). His request for review by the Appeals Council was denied (AR 4-7), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will grant Defendant's motion and deny Plaintiff's motion.

### I. BACKGROUND

      Jackson was born on September 10, 1958, and was forty-six years old on the date of the

ALJ's decision (AR 16; 48). He has an eleventh grade education, and past relevant work experience as a painting service laborer, janitor, dishwasher, plastics industry laborer and pallett factory laborer (AR 16; 67).

Jackson was seen by John C. Kalata, D.O. on August 23, 2003 for complaints of right groin pain (AR 101). Dr. Kalata noted that Jackson previously had two surgeries of the right inguinal area, and was very tender in the area (AR 101). Dr. Kalata found no hernia on physical examination, and diagnosed Jackson with right inguinal neuritis (AR 101). He prescribed Motrin for pain and referred him to Gregory Beard, D.O. for evaluation of hernia complaints (AR 101).

On September 15, 2003, Jackson was seen by Dr. Beard, who noted that he had performed Jackson's hernia surgery several years earlier and had not seen him since that time (AR 95). Jackson presented with right groin pain which reportedly had been present on and off since the surgery (AR 95). Jackson reported that he engaged in excessively heavy lifting and labor in his job which caused him significant pain and discomfort, but had no symptoms when not performing excessive labor (AR 95). Jackson's physical examination was essentially unremarkable, and Dr. Beard found that his incision was well healed, there was no evidence of infection, recurrent hernia, mass or other abnormality (AR 95). He assessed him with chronic right groin pain status post remote right inguinal hernia repair (AR 95). Dr. Beard found no evidence of recurrent hernia, and suspected a likely etiology of chronic scar tissue (AR 95). He ordered a CT scan of Jackson's pelvis for confirmation, and recommended that he find another type of employment that did not require excessively heavy lifting or labor (AR 95).

When seen by Dr. Beard on September 29, 2003, Jackson's physical examination was negative, and a CT scan of his pelvis was negative for recurrent hernia (AR 95; 97). Jackson again reported that lifting and heavy work exacerbated his pain, but when not engaged in heavy work, his pain was mild in nature (AR 95). Dr. Beard counseled Jackson that further surgery was not advisable, and recommended that he follow-up with Dr. Kalata "about helping him change jobs where he does not have to do heavy lifting such as he is doing now" (AR 95). Dr. Beard

informed him that he was cleared to return to his routine activities (AR 95).

Jackson returned to Dr. Kalata on October 4, 2003 and still had tenderness in his right groin (AR 101). Jackson reported that Dr. Beard stated he "cannot work anymore due to continued discomfort in that area" (AR 101).

In November and December 2003, Dr. Kalata diagnosed chronic right groin pain and prescribed Darvocet (AR 115).

On January 23, 2004, Frank Bryan, M.D., a state agency reviewing physician, reviewed the medical evidence of record and concluded that Jackson could occasionally lift and/or carry up to 50 pounds; frequently lift and/or carry up to 25 pounds; stand and/or walk about six hours in an 8-hour day; sit for about six hours in an 8-hour day; was unlimited in his push/pull ability; and had no postural limitations (AR 104-105). Dr. Bryan assigned controlling weight to Dr. Beard's report dated September 29, 2003 and adopted his report in his assessment of Jackson's functional capacity (AR 108). He considered Dr. Kalata's report dated November 3, 2003, which referenced an inability to work, and concluded that his continued ability to work (or lack thereof), was an issue reserved to the Commissioner (AR 109).

Jackson continued treatment with Dr. Kalata throughout 2004, and consistently complained of right groin pain (AR 115-117). Dr. Kalata assessed him with chronic right groin pain and prescribed Darvocet (AR 115-117). On February 19, 2004, Dr. Kalata noted that Jackson walked with a cane favoring his right side (AR 115). He also walked with a cane at his April 12, 2004 office visit (AR 115).

Finally, on January 24, 2005, Dr. Kalata completed a residual functional capacity assessment, and opined that Jackson could lift and carry 10 pounds occasionally and two to three pounds frequently, but could stand for only one hour or less and sit for two hours (AR 118). He further opined that Jackson could never stoop or crouch while working, could occasionally bend and kneel, and was limited in his reaching and feeling abilities (AR 119). Dr. Kalata listed "right groin pain" and stated that "patient uses cane for all movements" in support of his work-related

3

limitations (AR 118-119).

Jackson and Sam Edelmann, a vocational expert, testified at the hearing held by the ALJ on January 28, 2005 (AR 125-146). Jackson testified that he suffered from pain in his right side with numbness down to his toes (AR 132; 140). He claimed Dr. Kalata prescribed a cane for walking (AR 132). He performed no household chores and watched television during the day (AR 134). He claimed he had difficulty walking, taking care of his personal needs and sitting (AR 139). Jackson further testified that he did not like being around people, could not read very well, was unable to write a letter, and required assistance when he filled out his disability forms (AR 134-135).

The vocational expert was asked to consider an individual of Jackson's age, education, and vocational background, who could perform sedentary work remaining seated most of the day performing simple, repetitive tasks (AR 141). The expert testified that such an individual could work as a hand packer, assembler or security monitor guard (AR 142). The expert further testified that such an individual would be precluded from employment if he was unable to reach as far as 12 inches or had no feeling in his hands (AR 143-144).

The ALJ subsequently issued a written decision which found that Jackson was not entitled to a period of disability or disability insurance under the Act (AR 15-22). His request for review by the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 4-7). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence

but more than a mere scintilla.  *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

### III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A).  In order to be entitled to DIB under Title II, a claimant must establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c).  The ALJ found that Jackson met the disability insured status requirements of the Act through the date of his decision (AR 16).

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141.  If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.*  If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.

In the instant case, the ALJ found that Jackson's residual effects of right inguinal hernia repair (including scar tissue adhesions) was a severe impairment, but determined at step three that he did not meet a listing (AR 17-18).  He further determined that Jackson could not return to

his past relevant work, but retained the residual functional capacity to perform simple, repetitive tasks consistent with his education and work history at the sedentary exertional level, lifting no more than ten pounds occasionally and remaining seated most of the work day (AR 19). The ALJ additionally found that Jackson's allegations relative to his functional limitations were not totally credible (AR 21). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Jackson challenges the ALJ's evaluation of the medical evidence with respect to the opinions of his treating physicians. His argument in substance is that the ALJ erred in failing to accord controlling weight to the opinions of his treating physicians, and/or rejected their opinions on inadequate grounds in violation of the treating physician rule.

It is well settled in this Circuit that the opinion of a treating physician is entitled to great weight and can only be rejected on the basis of contrary medical evidence. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988). An ALJ must articulate in writing his or her reasons for rejecting such evidence. *Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981). In the absence of such an indication, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id*. Further, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd Cir. 1993).

Contrary to Jackson's contentions, we find that the ALJ considered his treating physicians' opinions consistent with the above standards. Notwithstanding Jackson's claim that the ALJ rejected Dr. Beard's opinion and/or treatment notes without an explanation, a review of the ALJ's decision reveals that he did *not* reject Dr. Beard's opinions. To the contrary, the ALJ discussed Dr. Beard's findings in depth, and in fact, relied on his opinions in part in fashioning Jackson's residual functional capacity ("RFC"). As the ALJ observed, a CAT scan ordered by Dr. Beard was essentially normal, revealing only nonspecific thickening involving the right

inguinal soft tissues (AR 17).  The ALJ further noted that Dr. Beard felt the most reasonable course of action for Jackson would be to find another type of employment that did not require excessive heavy lifting or labor and released him to return to routine activities (AR 17).  Finally, the ALJ observed that Dr. Beard's treatment notes indicated that Jackson only suffered pain brought on by heavy lifting activities (AR 18).  We therefore find Jackson's argument without merit in this regard.

Jackson also challenges the ALJ's decision to accord minimal weight to Dr. Kalata's opinion.  Dr. Kalata opined that Jackson was capable of lifting up to ten pounds occasionally, could stand or walk for one hour or less, could sit for only two hours per day, could never stoop or crouch, and his abilities to perform reaching and feeling activities were impaired (AR 118-119).  The ALJ observed that if this opinion were accepted at face value, it would indicate that Jackson was basically confined to bed for all but three hours per day (AR 19).  The ALJ found that his opinion was purely conclusory, without any supporting explanation or rationale (AR 19).  The ALJ further found that Dr. Kalata's underlying treatment notes did not support his opinion (AR 19).  He observed that Dr. Kalata had not obtained any imaging or other objective studies, but simply accepted Jackson's subjective complaints and prescribed non-narcotic medication (AR 19).  Finally, he found his opinion that Jackson could sit for only two hours per day was contrary to Jackson's own testimony that he sat a watched television throughout the day (AR 19).  Consequently, the ALJ declined to accord Dr. Kalata's opinion controlling weight.

Upon review of the ALJ's decision and consideration of all the record evidence here, we do not agree that the ALJ committed reversible error in this regard.  A treating source's medical opinion concerning the nature and severity of the claimant's alleged impairments will be given controlling weight if the Commissioner finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(d)(2).  Here, we conclude that the ALJ properly declined to give Dr. Kalata's opinion controlling weight under these

standards.

As noted by the ALJ, Dr. Kalata did not provide any narrative explanation or specific findings to support his assessment. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in the blank are weak evidence at best."). As further noted by the ALJ, Dr. Kalata's opinion was unsupported by his own clinical findings as set forth in his progress notes. Jackson suggests that Dr. Kalata's treatment notes contained information that supported his ultimate opinion and the ALJ erred in failing to mention same. However, unlike Jackson's citation to *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3rd Cir. 2001), wherein the Third Circuit found a disparity between the actual record and the ALJ's sparse synopsis of same, Dr. Kalata's records are completely devoid of any findings which would support the limitations imposed. His treatment notes only indicate that Jackson complained of right groin pain and medication was prescribed, and no diagnostic studies were ever obtained. We additionally observe that Dr. Kalata's opinion was at odds with Dr. Bryan's opinion, the state agency reviewing physician, who engaged in a comprehensive review of the medical evidence and provided a detailed explanation for his opinion, and concluded that Jackson could perform medium work. It is long-settled that the findings of a non-examining physician may be substantial evidence defeating contrary opinions. *Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991) (ALJ did not err in rejecting opinion of treating physician in favor of opinions from state agency physicians, where treating physicians' opinions were conclusory and unsupported by the medical evidence).

Finally, we observe that the ALJ did not completely reject Dr. Kalata's opinion. Indeed, he accepted Dr. Kalata's limitation that Jackson was only capable of lifting ten pounds in fashioning his RFC. Since the ALJ analyzed the medical evidence consistent with the required standards, we find that his determination is supported by substantial evidence.

Jackson further contends that ALJ improperly evaluated the vocational expert's testimony. The law is well established that "[w]hile the ALJ may proffer a variety of

assumptions to [a vocational] expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984). In other words, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987), *citing, Podedworny, supra. See also Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150 (3rd Cir. 1983).

Here, Jackson generally argues that the ALJ's hypothetical did not accurately portray the extent of his functional limitations supported by the evidence. To the extent that he claims the hypothetical was contrary to Dr. Kalata's RFC assessment, we have already determined that the ALJ's rejection of Dr. Kalata's assessment with respect to Jackson's functional limitations was supported by substantial evidence. Accordingly, we find no error in this regard.

### IV. CONCLUSION

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES JACKSON, )<br>)<br>  Plaintiff, )<br>)<br>    v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>  Defendant. ) | Civil Action No. 05-307 Erie |

## ORDER

AND NOW, this 9th day of August, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 11] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 13] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, James Jackson. The clerk is directed to mark the case closed.

                   s/ Sean J. McLaughlin
                   United States District Judge

cm: All parties of record.